Mr. Clerk, please call the next case. Our next case this morning is 3-4CBX1011A-C. David DePaul v. Kavneriski v. Victoria v. General Starkey v. Alameda. James Springer v. Appellant v. Lear. Mary v. Appellant v. Lear.  May it please the Court. My name is James Springer. I'm counsel for Petitioner Appellant David Kavneriski. I'd like to discuss six material facts for which are undisputed and for which there is no contrary evidence. First, Mr. Kavneriski was diagnosed with low back degenerative disc disease and a lumbar disc herniation on September 5, 2007. Secondly, Mr. Kavneriski experienced severe low back pain and thigh pain, which he reported to his doctors and to his employer in August of 2007. The earliest medical record referring to such pain is dated August 28, 2007. Third, the employer knew, beginning in August of 2007, that Mr. Kavneriski was experiencing low back and thigh pain for which he was receiving medical treatment. Fourth, Mr. Kavneriski had surgery to remove the herniated disc and to remove lumbar bone spurs that were compressing the nerve root. Fifth, Mr. Kavneriski took post-surgical treatment consisting of physical therapy, ultrasound, massage, stretching, strengthening, muscle relaxers, spinal injections, and chiropractic treatment. Sixth, Mr. Kavneriski worked full-time for Respondent from 1978 to the time of reporting severe low back and thigh pain in August of 2007. His job consisted of repetitive lifting of bundles of newspapers weighing 15 to 30 pounds each, accompanied by stooping, bending, placing the bundles of papers on pallets or skids, and lifting the empty skids. This was his only job other than working as a bartender. No other employment involved lifting. I'd like to discuss briefly the causal opinions. Dr. Klopfenstein was Mr. Kavneriski's treating physician for this injury, beginning on September 9, 2007. He examined Mr. Kavneriski personally, interviewed him, performed surgery on him, and oversaw his rehabilitation. Dr. Klopfenstein opined that Mr. Kavneriski had low back degenerative disc disease, which consisted of loss of disc space, spondylosis, disc desiccation, and bone spurring. He also had a lumbar disc herniation or extrusion. Dr. Klopfenstein explained that the disc extrusion is simply the extreme end of a continuum of degenerative low back conditions. The more the low back is stressed, the more these various conditions are aggravated, which can result in a disc herniation. Dr. Klopfenstein opined that Mr. Kavneriski's history of lifting, bending, and stooping at work could have aggravated his low back degenerative disc disease. Counsel, let me interject one question. You were talking about, you know, the history of the aggravation. Did we miss something? At the hearing before the arbitrary, didn't you attempt to prove a specific accident on a specific date? I would not limit it to that, no, sir. We offered a date of manifestation, which was when the injury became so severe that Mr. Kavneriski could no longer work. Okay, so that's in August. Your application, did it not say an accident date of August 3rd? It did, Your Honor. That's true. And so what happened on August 24th that you had your claimant testify to? That, according to his testimony, was when he experienced the severe low back and thigh pain that was disabling and caused him to go to his doctor, Dr. Wallace. So the earlier date was what? Oh, the earlier date was in the application. It was August 3rd, I believe. Yeah, but what lies behind the earlier date? Well, Judge, I'm... Underlies it. Yeah. He was probably experiencing low back pain that far back. He had some low back pain previous to August 24th. I'll have to say, I don't think August 3rd, 2007, should have been the application. I did ask the arbitrator and the commission to amend the date of injury. Well, wasn't your theory up to that point it was a repetitive lifting that caused the problem? Yes, sir. Wasn't that what you were going at? That is correct. But then he shifted to a sudden problem with the back on August 24th, right? I don't think that's accomplished. Judge, Dr. Klumpenstein says that what he had was a continuous, long-term, low back degenerative disease. And if you lift, it makes all these things worse. The disc desiccation, the bone sprain, and it can cause the herniation. The herniation is simply the extreme outcome of all these degenerative processes. Okay. I think this is important to you as well, but I'm sure your opponent is going to say, well, wait a minute here. According to the medical records from his first visit to Dr. Wallace four days later, he said nothing about any injury on August 24th. None of the other doctors indicate any specific occurrence on that date. So isn't there a little bit of a conflict there? Dr. Wallace says that he has new low back and thigh pain times 10 days, something like that. That's what Dr. Wallace's note says. That's August 28th. If you go back 10 days, I realize that's August 18th, not August 24th. I think the 10 days is an approximation. I don't think Dr. Wallace says, he told me August 18th. So he never really told any doctor he had a specific occurrence, a sudden and tremendous pain on August 24th, did he? Did he tell any doctor that? He says that he did tell Dr. Wallace that. Yes, sir. But is that in Wallace's records? As you phrased it, no, sir, it's not in Dr. Wallace's records. May I proceed? Sure. The causal opinion from Dr. Plummett's sign defeats respondent's argument that Petitioner's application for adjustment of claim asserted repetitive trauma, whereas testimony at trial was a discrete trauma. What Petitioner testified to at trial was the date of manifestation, which is an essential element of his proof. This was the date when he could no longer work, when the pain became disabling. This proof is required, even in a repetitive trauma case. It does not defeat Petitioner's claim where Dr. Plummett signs an opinion that the underlying condition was a deterrent to this disease, which took a particularly severe form on a bigger date, namely the date of the herniation. Now respondent section 12 expert Dr. Soriano reviewed the medical records. He did not review the evidence deposition of Dr. Klopfenstein, and thus was deprived of Dr. Klopfenstein's causal opinion. He did not interview or examine Mr. Krasmersky. Dr. Soriano simply said he saw no evidence of a causal connection with the work, but he was not presented with the history of the injury or description of Mr. Krasmersky's work. The only fact that Dr. Soriano offered to support his opinion was that Mr. Krasmersky had checked other rather than work-related on a form. Dr. Soriano did not cite any medical evidence that would exclude the work as a cause or point to some other cause, and to rely upon a layman's opinion as to causation simply is not competent medical testimony. Now respondent notes the general lack of causal opinions stated in the medical records. Dr. Klopfenstein explained causal connection with work is generally a secondary matter or an unimportant matter to a treating physician. It's not surprising that it would not be referred to in the records. Based upon Dr. Klopfenstein's testimony, the work could have caused or aggravated both the low back degenerative disc disease, such as loss of disc space, and also the disc herniation, which are simply the mild form and the extreme form of one medical condition. There was no other explanation offered by any physician as to the cause of Mr. Krasmersky's medical conditions. Respondent's brief at 23 states, quote, the petitioner's low back condition was likely the result of a degenerative process which had nothing to do with his employment, unquote. No physician, whether treater or consulting expert, offers this opinion. An attorney's unsupported statement as to causation is not evidence for this court. At trial, Mr. Krasmersky admitted that he sometimes told certain individuals, including treaters, that he thought his low back condition was work-related, and sometimes he did not so tell. In fact, when he filled out a report for Dr. Klopfenstein, he checked other rather than work-related on the intake plan. Mr. Krasmersky's failure to assert a causal connection with the work, or even denying even by implication a causal connection with the work, is a constant source of arguments offered by the respondent as to why the petitioner should not be believed. This argument occurs at virtually every page of respondent's brief, including the argument and the supposedly factual summary.  There is no indication the petitioner ever told Mr. O'Donnell that claimed back injury was work-related. The respondent asserts that this failure to conduct the injury with the work is an impeaching inconsistency. Given the respondent's argument, the failure of the arbitrator to allow the petitioner to testify as to why he did not assert or even deny the causal connection with the work is manifestly erroneous. For the respondent to claim, as it does in his brief, that it was a most harmless error is extraordinary. This supposedly harmless error concerns an issue that respondent has asserted at every level of this proceeding, beginning with the trial. On behalf of the petitioner, I have cited to this court nine appellate court decisions and three standard reference works on Illinois evidence law. For the proposition that where a witness, whether party or otherwise, is impeached by a prior inconsistent statement, he has an automatic right to testify. You have a little problem in that regard. You asked to make an offer of proof. You made an offer of proof. It had absolutely nothing to do with the question that you was objecting to. Absolutely nothing. Read the passage. I'll read it for you. The objection was made. Let me get through here. I made a note of it. Ah, okay. On direct and cross-examination, the claimant testified that he informed lawless within days of his alleged accident. He was asked for, you know, the reason for the inconsistency. He was asked why he told some and didn't tell the others. An objection was made to that question by Starr, and the response was disallowed. At the conclusion of O'Donnell's testimony, the claimant's attorney made the following offer of proof. If allowed to testify, the claimant would testify that he did not file an application of adjustment of claim or tell his superior other than Mr. Burnside that there was, in fact, an on-the-job injury. Because of the experience with the previous work compensation claim, his observation of other employees under his direction had filed work compensation claimant that those individuals were not treated well and they were not paid their salary and didn't call back after work and ready to come back. In other words, this was a protection, as he saw it, to make sure he was not treated unfairly and discriminatorily. You argue that the exclusion of the testimony was erroneous. He was asked why he didn't tell his medical providers consistently that it was an on-the-job injury. The offer of proof has to do why he didn't inform his employers. Why he didn't tell his supervisor. One's an apple, the other's an orange. You're required to make an offer of proof that relates to the question excluded. If you fail to make the offer of proof, you lose the argument. Judge, I can't quote the transcript to you, but the thrust of the cross-examination was didn't you sometimes deny or sometimes fail to state that this was an on-the-job injury? And he admitted that. And I asked him why did you sometimes state it was an on-the-job injury and sometimes not. The question was related to Starr impeached him with the patient information sheet from Koppelstein's office in which the claimant failed to check the box representing that his injury was work-related. On redirect examination, the claimant confirmed that there were situations where he told a treater that the accident was work-related in situations where he did not tell the treater, and this is a direct quote, that it was work-related. When you asked the reason for his inconsistency, and that's the answer to the treater, the only questions that were asked, the objection was sustained. Your offer of proof had nothing to do with his inconsistency with the treaters. Your offer of proof had to do why he didn't tell his supervisor. And so the problem that you have is in order to preserve the objection, you have to make an offer of proof that would have something to do with the question that was objected to. You didn't do it. Judge, I respond to that. The question was raised, didn't you sometimes tell your treaters and deny your accusers work-related? And the same question was asked about co-workers or superiors. That's not what you objected to. That's not what the objection was to. That's not what you tried to do. You asked him why there was an inconsistency, and the only thing that was referred to prior to the objection was treaters. I mean, I've got the direct quote here. Do you want me to read it to you again? I do think that in his cross-examination he was asked not only about treaters but also about superiors and co-workers. Nobody objected to him testifying as to why he didn't tell his superiors. Nobody objected to that. The objection was to explaining why he had inconsistencies with the treater. That's what the offer of proof had to be directed to. It wasn't. The explanation is that he was concerned about retaliation from his employer if this statement of a causal connection became known to the employer or anybody else. So therefore, dealing with superiors, he sometimes did not, well, not denied, but didn't tell in those work-related environments with the treaters. You can see, though, if you make the offer of proof that's not relevant to the objection, if that turns out to be the case, and I know you have an explanation you didn't do that, but if that was hypothetically the case, that would be an improper offer of proof, wouldn't it? Do we agree on that? Hypothetically. Yes. The objection was he sat here and testified that he was inconsistent, and now he's trying, I'm sorry, my time's up. You'll have time to reply. Thank you. Thank you, counsel. Counsel, you may respond. Thank you, Your Honor. May it please the court, counsel. My name is Ilyari Mary, and I represent Gatehouse Media in this matter. Your Honors, as you're all aware, this is a manifest way of the evidence standard. What we have here is a situation in which the petitioner in his application alleges repetitive trauma. Unfortunately, it appears that nobody told the petitioner that's what he was alleging because from trial time he indicated it was a specific injury at a specific time during a specific thing. Well, let's assume it's by the inconsistency, and the questions we were asking were designed to elicit. Okay, so assuming that it was a specific incident, is there any medical documentation to support the sudden injury on the 24th? No, and we're not conceding that there was a specific injury. What I'm saying, Your Honor, is that he alleged in his application it was repetitive, then at trial states it was a specific injury, so that's inconsistent, and there is no medical evidence to support a specific injury on that date. As I indicated in the brief, we have five different dates of accident in this case. This is a shotgun approach as far as date of accident is concerned. We have one for the application, and then we have one where he says it was the 24th, and then he's asked, well, how do you know it was the 24th? Well, it's because it's the first time I went to my doctor, Dr. Lawless, and that's how I know. Well, when he went to Dr. Lawless's office, that's a different date. And then the notes from Dr. Lawless's office indicates that his date of injury, it claims, was 10 days before that. So there's no consistency whatsoever as far as the date of accident is concerned. Let's break this down. Yes, it's rather confusing whether this claimant wanted a recovery for a specific injury or he was hedging his bet and trying with repetitive trauma. And so there's no evidence of any specific injury in this case. He never reported to SPARE or nothing. So let's turn to the repetitive trauma. What evidence is there in the record to support a repetitive trauma theory? The only record that I can see that the petitioner was putting forth in this was the fact that he had to work X amount of years, and in those X amount of years he had to lift some pallets and other equipment as part of that. However, during the last few years of his employment, the years before this accident, he wasn't doing any of that. He was a supervisor. And therein lies the problem. Is it true that the hypothetical that was given to the doctor on behalf of the claimant assumed that he had been working for years to decades of this lifting? And the claimant later on, in contradiction, says that there was some ergonomic, there was some changes in the job, and that wasn't true for years, correct? Correct. And that's not the only problem with the petitioner's causation. The petitioner's causation opinion comes from the doctor via a letter that was sent saying, if for 32 years I was doing this repetitive lifting, could that have caused my degenerative issues? And the doctor said yes. But that's not what he testified to. He testified to that on a specific date, which we couldn't figure out what it was. He was lifting a pallet that caused his injury. So there is absolutely no connection between the actual causation opinion that was given by his expert to the way that the injury actually occurred. Well, the hypothetical doesn't fit his testimony. That's clear. But the doctor did offer an opinion, but what was the opinion after the hypothetical? I believe his phrase was, certainly conceivable, I think is his exact words, that if the claimant were lifting 25 to 30 pounds routinely, and over the course of years or decades, this could have led to a herniated disc. Now, is certainly conceivable sufficient to establish an expert opinion? If the question was of a repetitive trauma nature, but that's not what the petitioner alleged. Well, but is certainly conceivable within a reasonable degree of medical certainty? No. No, it isn't, Your Honor. Aside from the injury. Is it merely possibility? It is, Your Honor, which is insufficient. But beyond those issues, Your Honor, there's also a big issue in this case as to notice. The petitioner or the gatehouse media was never provided proper notice in this case. The petitioner alleges that in his brief actually indicates that was effective notice and goes through an analysis of defective notice. We don't need to do that, because there was no notice. Section 6. Well, there's no notice. Prejudice doesn't enter the equation, does it? No, it doesn't. Absolutely right. And that's where I was going with my argument. Thank you, Your Honor. The Section 6C of this act states that notice of the accident shall be given to the employer as soon as practical. Just because gatehouse media knew that the petitioner was having back issues does not mean that any notice of a work-related accident was ever given. Kazminsky was required to notify gatehouse media that his back issues were as a result of a work-related injury. I believe it was this very court that decided that in light of this Industrial Workers' Compensation Commission. The record in this case shows that gatehouse media was never apprised of the injury in question being in any way work-related at all. Or that said injury was in fact due to any industrial injury. Until Kazminsky filed his application nearly two years later. As such, no notice was ever properly provided gatehouse media, so there's no need to go through the defective notice analysis that the petitioner does in his brief. As far as the objection is concerned, Your Honor, the petitioner alleges that his client was impeached. If you look at the record, his client wasn't impeached. His client testified on direct that sometimes he's told his doctors that it was work-related and sometimes it didn't. On cross, he was asked, well, sometimes you told your doctors it was work-related and sometimes you didn't. Yes. And then on redirect comes back and says, well, you told your doctor sometimes and sometimes you didn't. Correct. That's all consistent. There is no inconsistency. There is no impeachment there. So what the opposing counsel attempted to do with this operative proof was basically bolster his client's testimony. Which is inappropriate given that there was no impeachment of his client's testimony. Are you telling us there was sufficient evidence in the record to support the commission's decision? Is that the bottom line? I am, Your Honor. Thank you. Thank you, counsel. Counsel, you have time on reply. I propose to discuss two of the things that counsel corresponded on. Great. Issue of notice. Counsel says there was no notice, not defective notice, no notice. Your claim had testified that when minutes of the accident notified his superior, Burnside, that he'd injured his back while picking up a pet. That is correct. That was his testimony. That was his testimony, Judge. He also said within a few days subsequent to that, pursuant to Mr. Burnside's instruction, he contacted three individuals and informed them of his low back condition. In fact, he said, I think I have a herniated disc. He told three individuals that. He didn't tell them it was work-related. That's the issue. Well, is that a requirement? Doesn't he have to indicate it was work-related? I don't believe so, Judge. I've cited two cases, about four cases, my brief, in which the notice was the petitioner had a heart attack, the petitioner had a lung injury, the petitioner had low back problems, and that was found to be adequate notice. Well, without looking at all of those cases specifically, but hypothetically, if an employee comes in on a Monday and says, I've got severe low back pain, how would the employer know it didn't happen over the weekend in the garden? Depends upon the petitioner's job. Among other things, that's what these cases say. If you have a carpenter, I believe was the example, and he's continually downed his knees and bending his back, that by itself, combined with the statement that I had a low back condition on a certain date, can lead the respondent to be on notice. It isn't perfect notice. I'm not saying it is. I'm simply saying that when the petitioner's work is known to involve low back stress. So you would say the employer is supposed to ferret this out. If the employee comes in and says, oh, he does a lot of bending and lifting admittedly, and he comes in on a Monday and says, man, my back's bothering me, the employer is supposed to cross-examine him to see if it's work-related? I don't think the employer is supposed to cross-examine him, Judge. The employer may have a duty of inquiry. Secondly, if there is defective notice, not notice, then the issue is, was the employer prejudiced? Did Burnside ever testify in this case? I'm sorry? Did Tim Burnside ever testify in this case? No, sir, he did not. So the claimant's testimony that he notified Burnside, his superior, immediately after the accident, that he injured his back while picking up a pallet is unrebutted? I'm sorry, that's his own testimony. That's the claimant's testimony. It is unrebutted. I'm sorry, it's what? It's unrebutted? It's unrebutted, yes, sir. Burnside never testified? Burnside never testified, no, sir. Okay, so, all right. With regard to this impeachment or non-impeachment, the issue is, did the testifying witness make a prior inconsistent statement? Usually that comes up through impeachment for obvious reasons. It doesn't have to be that. If for some reason the testifying witness said to the police officer or to the insurance investigator, this is the way it happened, at trial he testified to something else, he has the right to explain that difference, and so does his attorney. Thank you, Judge, I'm out of time. Thank you for your time. No, it's not until the red light goes on. I'm sorry? You still have time until the red light goes on. Oh, I'm sorry. That's a caution. Okay, I'm sorry. With regard to the impeachment of the prior inconsistency, I've cited the cases to you. I mean, I do not mean to be flippant, but there's never any authority cited by the respondent that's contrary. The person who has the right to explain his prior inconsistency is the witness, and the attorney who called that witness has an automatic right to do that. And whether it's beyond the scope of cross or beyond the scope of redirect normally, it's not an issue. It's an absolute right to explain that inconsistency. That's all I have, Judge. Thank you very much for your attention. Thank you, Counsel. Thank you, Counsel, both, for your arguments in this matter of detainment or advisement. And a written disposition shall issue. Will the clerk please call the last case?